UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HURSHED SOLEJONOVICH FOZILOV (A# 204-923-323),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-08316 DC SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner is a citizen and national of Uzbekistan who entered the United States near Yuma, Arizona, on December 8, 2022. ECF No 1-1 at 4 (Form I-213). Immigration officials released him on humanitarian parole the next day pursuant to 8 U.S.C. § 1182(d)(5). Id. On September 23, 2023, Petitioner applied for asylum and received an employment authorization card. Id. He has no criminal record and has complied with parole requirements. ECF No. 1 at 2, ¶ 6. On August 7, 2026, local law enforcement officers with a 287(g) task force arrested Petitioner after a traffic stop and transferred him to the custody of Immigration and Customs

Enforcement ("ICE").[1] ECF No 1-1 at 3. Petitioner is currently detained at the California City Immigration Processing Center within this judicial district. ECF No. 1 at 6, ¶ 25.

In his petition, Petitioner alleges, *inter* alia, that Respondents' revocation of his parole without pre-deprivation notice and hearing violated the Due Process Clause of the Fifth Amendment (Count Three). ECF No. 1 at 13. He seeks immediate release. Id. at 14. In their opposition, Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) but acknowledges "this case is in the category of immigration habeas cases for which the Court has typically ordered immediate release on due process grounds." ECF No. 7.

**II. Legal Standards**

**A. Constitutional Standards**

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that

[1] Immigration and Nationality Act ("INA") § 287(g) [8 U.S.C. § 1357(g)] permits the Attorney General to deputize local law enforcement "to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of [noncitizens] in the United States."

government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."[2] Id.

**III. Analysis**

The District Judge assigned to this case has found that in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the Due Process Clause requires that it provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered. See Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) (granting motion for temporary restraining order and immediate release of the petitioner based on his likelihood of success on the merits of his due process claim); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025) (same); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026) (same); Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, 2026 WL 309563, at *6-*7 (E.D. Cal. Feb. 5, 2026) (granting motion for temporary restraining order and habeas petition as to the petitioner's due process claim).

Consistent with the Court's reasoning and rulings in these substantively identical cases, the undersigned finds that the Mathews factors on analysis show that Petitioner's re-arrest without

---

[2] Petitioner argues that his detention did not revert to § 1225(b) when he was re-detained, but is instead governed by 8 U.S.C. § 1226(a). Numerous district court judges have found § 1226(a) governs in these circumstances based on a close reading of certain terms within § 1225(b) that limit to whom that statute applies. See Rodriguez v. Rokosky, No. CV 25-17419 (CPO), 2025 WL 3485628, at *2 (D.N.J. Dec. 3, 2025) (analyzing the issue and collecting cases). The Court need not resolve the issue in this case given that Petitioner's due process rights and his remedy are identical under either statutory detention authority.

pre-deprivation notice and hearing violated his Fifth Amendment right to procedural due process. As Petitioner has no criminal history and Respondents have not identified any exigent circumstances warranting his re-arrest without pre-deprivation notice and hearing, the undersigned recommends that the petition be granted on Petitioner's procedural due process claim (Count Three) and Respondents be ordered to immediately release Petitioner.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count Three.[3]

2. Respondents be ordered to IMMEDIATELY RELEASE Petitioner HURSHED SOLEJONOVICH FOZILOV (A# 204-923-323) on the conditions of supervision in place at the time of his re-arrest on August 7, 2026.

3. At the time of release, Respondents must return all of Petitioner's documents and possessions.

4. Respondents be ordered to file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.

5. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

6. The final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7. The Clerk of Court be directed to:

   a. Serve a copy of any release order on the California City Immigration Processing Center; and

[3] In the interests of judicial economy, Petitioner's remaining claims are not addressed herein.

b. Enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 28, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE